**CONWAY, Plaintiff, v CULL, etc., et al., Defendants.**

Common Pleas Court, Cuyahoga County.

No. 523615.   Decided March 2, 1943.

Wm. C. Dixon, Esq., Cleveland, for plaintiff.
Thos. A. Burke, Jr., Director of Law, Cleveland, and Charles W. White, Asst. Director of Law, Cleveland, for defendants.

## OPINION

By HURD, J.

This is an original action in equity for injunction and equitable relief against the members of the Cleveland Civil Service Commission. The plaintiff alleges in substance that he took a civil service examination for the position of fireman and patrolman in the service of the city of Cleveland, pursuant to an advertisement and notice of open competitive examination set forth in the City Record of the city of Cleveland in the issue of August 6th, 1941; that he passed said examination with an approximate grade of 87 and 84 respectively, and that he was thereafter subjected to physical tests and a medical examination in which the medical examiners for the defendants informed the plaintiff that he was not qualified to perform the duties of either fireman or patrolman in the service of the city of Cleveland by reason of high blood pressure; that thereafter he subjected himself to a complete medical examination by other competent and qualified physicians to determine the nature of his physical condition, and was by them pronounced in excellent physical condition in every respect and fully qualified to perform the services of a fireman or patrolman: He alleges further that the objection to his fitness by the medical examiners for the defendants was unwarranted, arbitrary and unreasonable and without any reasonable foundation in fact. He alleges further that by reason of the arbitrary and unreasonable exclusion of his name from the eligible lists he has been prejudiced and prays for an order of this Court enjoining the defendants from certifying any further names to the appointing officers of the fire and police divisions of the Safety Department of the city of Cleveland, unless and until the name of the plaintiff is properly placed upon said eligible lists for said positions, and that the defendants be required to place his name on said eligible lists in accordance with his proper ranking established by said competitive examinations.

Defendants filed their joint answer, in which they admit their official capacities and that the plaintiff filed his applications for the civil service tests and paid the necessary fees therefor, and passed the written part of his tests with grades approximately set forth in his petition, and then deny each and every other allegation of the petition and allege that upon medical examination the plaintiff was found to have hypertension by the medical examiners designated by defendants, who recommended that he be rejected on that account, which recommendation was approved by the defendants, whereupon the plaintiff upon application was afforded a re-examination, and that the re-examination resulted in a second finding of hypertension and an adverse recommendation by defendants' medical examiners, and that by reason thereof the plaintiff was rejected as ineligible; that thereafter on three separate occasions in nine months defendants granted hearings on plaintiff's

requests for rehearings, and heard whatever evidence plaintiff had to offer; that the plaintiff urged defendants to accept the judgment of medical examiners of his own choosing and reject the judgment of medical examiners designated by defendants; that defendants declined to overrule their medical examiners with the result that the allegation of the plaintiff as an eligible was adhered to and the defendants pray that the plaintiff's petition be dismissed.

The case came on for hearing upon the issues so made. The evidence disclosed that the plaintiff was rejected upon his first examination because of diastolic hypertension. This action was taken on recommendation of a certain Doctor Mason, then in the employ of the Civil Service Commission. Upon his own request the plaintiff was granted re-examination and was again rejected on the recommendation of a certain Doctor Martin, another physician in the employ of the plaintiff. The first examination took place on the 7th day of January, 1942, and the re-examination on the 20th day of January, 1942. Upon the re-examination the blood pressure readings of the plaintiff as reported by Dr. Martin were as follows:

"Left arm, systolic—182, Diastolic—100;
Right arm, systolic—170, Diastolic—94."

The evidence further disclosed that a high normal standard had been set by the Commission previous to these examinations at 155—systolic, and 95—diastolic. The testimony of the several physicians was unanimous to the effect that this high normal standard set by the Commission is reasonable, particularly in view of the fact that the general high normal standard set by insurance companies, industry and the United States Army is a blood pressure of 150 systolic, and 90 diastolic. It was conceded by plaintiff's counsel in open court that the standard so set was fair and reasonable.

The plaintiff introduced the testimony of five physicians who examined the plaintiff on various dates from January 5th, 1942, to April 13, 1942. The examinations of these physicians showed a blood pressure well within normal limits and within the high normal standard set by the Commission with the exception of the examination and report of one Dr. Richard Dexter, one of whose examinations made April 13th, 1942. approximately three months after the first examination by the Commission, showed blood pressure readings two minutes after exercise of 140/100, right arm; 130/90 left arm. This witness testified that the fact that the blood pressure found by him to be 10 degrees higher in the right arm than the left arm was difficult to explain, but testified also that he believed it had no significance and that if this plaintiff should appear before him for examination in his capacity as a physician for the United States Army, he would pronounce him entirely fit for admission to military service

The principal question presented for the determination of the

Court on the pleadings and the evidence is whether or not the members of the Civil Service Commission were guilty of an abuse of discretion in this case. If so, then the plaintiff is entitled to an injunction as prayed for by him. On the other hand, if the plaintiff has failed to show such abuse of discretion on the part of the members of the Commission, the plaintiff is not entitled to an injunction and his petition should be denied.

It should be noted that this is not a statutory proceeding on appeal from the Civil Service Commission, but is a separate proceeding in equity wherein injunctive relief is sought by the plaintiff from alleged unwarranted, arbitrary and unreasonable action on the part of the defendants in their official capacity as members of the Cleveland Civil Service Commission. To entitle a party to such relief his right must be clear and well defined. It is a well settled rule of law that courts will not exercise their power by the summary process of injunction when the right is doubtful, nor will they interfere with or attempt to control the discretion of administrative officers of boards in matters within the scope of their official functions as long as such officers or boards are not guilty of an abuse of discretion vested in them by law, nor will the courts attempt to exercise supervisory powers over such public officers or bodies. But when there is a manifest or gross abuse of discretion where public officers or members of boards act arbitrarily, capriciously, unjustly, or where they are performing illegal acts under color of office or claim of right, the courts will right the wrong which has been done or prevent a threatened wrong by the equitable remedy of injunction, provided there is no adequate remedy at law.

Therefore it is clear that this Court has no power in the instant case to substitute its judgment for that of the Civil Service Commission so long as the Commission acts with sound discretion within the scope of its authority. It follows then that it is the duty of the Court to determine whether or not the plaintiff has proved a clear right to relief because of conduct of the Commission amounting to abuse of discretion. These are sound principles and salutory rules of law, for if it were otherwise the courts would be called upon continuously to interfere with the administrative affairs of public officers and boards in the performance of their duties. The result would be confusion and would tend toward government by injunction which would not at all be compatible with our well established principles whereby we endeavor to maintain under constitutional guaranties a clear distinction between the executive, legislative and judicial branches of government.

The evidence in this case shows clearly that the members of the Commission chose to accept the readings, findings and recommendations of the medical officers in the employ of the Commission in respect of the physical qualifications of the plaintiff. Can we say that such action constituted an abuse of discretion on their

part? We think not. Neither the members of the Commission nor their officers are presumed to have expert knowledge on technical medical subjects. One of the members of the Commission on cross examination freely admitted his lack of knowledge of medical subjects, and testified that he relied entirely upon the reports of the examining physicians employed by the Commission. He testified further that he preferred to accept the opinions of the medical examiners in the employ of the Commission rather than the reports of physicians privately employed by the plaintiff.

The testimony of this witness is fully corroborated by the minutes of the proceedings of the Commission. An entry in the minutes under date of January 25th, 1942, is in part as follows:

"Applicant submitted reports from various private physicians to show he meets the qualifications for these examinations. Also he was represented by an attorney * * * who requested that the Commission accept reports of private physicians. However, in accordance with the rule the Commission was of the opinion that private examining physicians' reports cannot be accepted in lieu of the · the Commissions medical examiners' reports."

The records of the Commission also show that thereafter communications from the applicant and his attorneys were received a number of times up to September of 1942, and acted upon with the same results. The disposition of the defendant members of the Civil Service Commission to accept and to rely upon the findings of their own medical examiners is quite evident throughout the record. Such action, although consistent and persistent in the face of repeated requests to do otherwise, does not in our opinion render their conduct unreasonable, arbitrary or capricious. It exhibits firmness but not unreasonableness. In such a case it is necessary for the members of the Commission to rely upon and to accept medical advice on the physical fitness of applicants from persons qualified to give such advice. If they choose to follow the advice of their physicians employed for that purpose it does not seem unreasonable for them to do so nor can it reasonably be said they are guilty of an abuse of discretion in so doing. If the Commission adopted the policy of following the advice and opinions of outside physicians privately employed in cases where disputes arose concerning the physical fitness of applicants, a system might soon develop where there would be as many outside private physicians as there were applicants whose physical qualifications were questioned or disputed. Such a system would not be conducive to orderly and proper administration of Civil Service.

This we think is particularly true with regard to such a technical subject as blood pressure. Highly competent physicians testified at the trial that blood pressure is variable and that a person may show changes in blood pressure from time to time and week

to week, and in fact that a variation may occur on different hours in the same person on the same day. Under such circumstances it seems entirely reasonable that the Commission should ▮▮▮▮▮▮▮▮ ▮ adopt the advice of its medical examiners in first setting a reasonable standard within reasonably high and low normal limits. When such a standard is fixed it is within the bounds of sound discretion to abide by the reports of its medical examiners employed for the express purpose of making such examinations and reports. The physicians so employed should be efficient, capable and wholly disinterested, and should act fairly and impartially according the same treatment to all applicants. There was no evidence introduced showing incompetence upon the part of the examining physicians of the Civil Service Commission. There was no evidence produced tending to show any partiality or discrimination on their part against the applicant or that the readings and reports made by them were not correct, except insofar as inferences could be drawn from the fact that other physicians found otherwise on examinations held upon other occasions. As fas as the record in this case is concerned the examinations and reports of the physicians of the Civil Service Commission stand unimpeached.

A few words with respect to Civil Service law may be appropriate in this connection. Our **Ohio Constitution, Article 15, §X,** provides as follows:

"Appointments and promotions in the Civil Service of the State, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

From the foregoing it may be readily seen that one of the primary purposes of the Civil Service laws and rules is to establish a merit system based upon competive examinations. The following from **O. Jur., Vol. 7, p. 310, §3,** of Civil Service, is pertinent:

"Purpose of the Law. The fundamental purpose of civil service laws and rules is to establish a merit system whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness without regard to political considerations and to safeguard appointees against unjust charges of misconduct and inefficiency and from being unjustly discriminated against for religious or political reasons or affiliations."

Our Supreme Court in a recent case entitled **State, ex rel., Mansfield v Turnball, 132 Oh St, 235,** said:

"The keystone of the arch in the structure of our Civil Service law pertaining to its administration is **fitness and efficiency.**"

If uniformity of treatment of applicants is to be observed, if appointments are to be made solely on the basis of relative fitness in accordance with competitive examinations in justice to all applicants and in justice to the ideals of Civil Service, the Commission must avoid any course of conduct which would give preference to any applicant on the basis of later examinations or re-examinations. Only such re-examinations should be granted as are consistent with the rules adopted by the Commission for the treatment of all applicants. To do otherwise would be to encourage a deviation from the letter and spirit of the laws governing Civil Service, and would likewise tend toward granting privileges to some which are denied to others.

Equality of justice demands that the Commission in conducting examinations for eligible lists should adopt uniform rules applicable to all alike with special favors or privileges to none and with impartiality and fairness to all. It is not sufficient that an applicant can pass an examination at some other time and place. In order to be eligible he must be able to pass the examination at the time set by the Commission and in accordance with the standards set by the Commission in its rules as applicable to all and in accordance with the findings of the medical examiners and others charged with the responsibility of giving such examinations. So long as such a procedure is followed courts of equity should not interfere by way of injunctive processes.

As we have above stated it is not for this Court to substitute its judgment for that of the Civil Service Commission, but to determine only if the Commission in this case was guilty of an abuse of discretion. Upon the whole record of the evidence in this case we reach the conclusion that the Civil Service Commission was not guilty of an abuse of discretion and that therefore the injunctive relief prayed for must be denied and the petition dismissed. Exceptions may be allowed.